IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDREA J. FAIRCLOTH,

        Plaintiff,

                                 12cv1824
        v.                          ELECTRONICALLY FILED

CAROLYN W. COLVIN, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

## Memorandum Opinion

**I.    INTRODUCTION**

Andrea J. Faircloth ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking review of the final determination of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401-433 and 1381 – 1383f ("Act").  This matter comes before the Court upon motions

for summary judgment.  (Doc. Nos. 8 & 11).  The record has been developed at the

administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment (doc.

no. 8) will be DENIED, and Defendant's Motion for Summary Judgment (doc. no. 11) will be

GRANTED.

## II.  PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on July 15 2011,[1] claiming an inability to work due to disability beginning September 21, 2010.  (Transcript ("Tr.") at 201-12).  Plaintiff was initially denied benefits on September 14, 2011.  (Tr. 73-102). A hearing was scheduled for February 24, 2012.  (Tr. 169-186).  Plaintiff appeared to testify, and was represented by counsel.  (Tr. 32-72).  A vocational expert ("VE") also testified.  (Id.).  The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on April 3, 2012.  (Tr. 14-31).  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on October 26, 2012, thereby making the decision of the ALJ the final decision of the Commissioner.  (Tr. 1-6).

Plaintiff filed her Complaint in this Court on December 14, 2012.  (Doc. No. 1-3). Defendant filed her Answer on March 6, 2013.  (Doc. No. 5).  Motions for summary judgment followed.  (Doc. Nos. 8 & 11).

## III.  STATEMENT OF THE CASE

The ALJ made the following findings in denying Plaintiff's application for DIB and SSI:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2012. (Tr. 19);
2. The claimant has not engaged in substantial gainful activity since September 21, 2010, the alleged onset date (20 CFR 404.1571 *et seq*. 416.971 *et seq*.). (Id.);
3. The claimant has the following severe impairments: breast cancer status post left breast mastectomy, cervical degenerative disc disease, major depressive disorder, panic disorder without agoraphobia, anxiety disorder, and alcohol abuse in early remission (20 CFR 404.1520(c) and 416.920(c)). (Id.);
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairment in 20 CFR 404,

---

[1] There is a discrepancy between the record of the ALJ opinion and the applicable filing forms on the date of application.

Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 20);

5. After careful consideration of the entire record, [] the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she has the need to avoid even moderate exposure to extreme heat and cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, is limited to simple, routine, repetitive tasks, and is limited to occasional interaction with the public, requiring only simple work-related judgments. (Tr. 22);

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965). (Tr. 25);

7. The claimant was born on July 26, 1966 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963). (Id.);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964). (Id.);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Id.);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)); (Id.); and

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 15, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)) (Tr. 26).

## IV. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F. 2d 1185, 1190-91 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of

3

Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003) (quoting *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988)); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011). The administrative law judge must consider all

medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Jones,* 364 F.3d at 504-05.

The Social Security Administration, acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by

the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *See John Balko & Assocs. v. Sebelius*, 2012 WL 6738246, *4 (W.D. Pa. Dec. 28, 2012) (citing *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001)). Thus, the Court's review is limited to the four corners of the ALJ's decision.

<u>Five Step Determination Process</u>

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. § 423 (d)(1). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920. *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990). The Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step* [*five*]. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted).  *See also Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005) ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the residual functional capacity ("RFC") to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered *per se* disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell,* 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553 (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.

1984)).  Where a hypothetical question to the VE accurately sets forth all of a claimant's

significant impairments and restrictions in activities, physical and mental, as found by the ALJ or

as uncontradicted on the medical record, the expert's response as to the existence of jobs in the

national economy which the claimant is capable of performing may be considered substantial

evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312

F.3d 113, 123 (3d Cir. 2002) (citing *Podedworny*, 745 F.2d at 218; *Chrupcala v. Heckler*, 829

F.2d, 1276 (3d Cir. 1987)) (the use of hypothetical questions to VEs).[2]  *See also Plummer*, 186

F.3d at 428 (factors to be considered in formulating hypothetical questions include medical

impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the

fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational

expert.'").  Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert

"often boil down to attacks on the RFC assessment itself."  *Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a

publication of the United States Department of Labor that contains descriptions of the

requirements for thousands of jobs that exist in the national economy, in order to determine

whether any jobs exist that a claimant can perform." *Burns*, 312 F.3d at 119; *see also id.* at 126

(The "Social Security Administration has taken administrative notice of the reliability of the job

information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an

unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not

---

[2] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a
claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record
"medically undisputed evidence of specific impairments not included in a hypothetical question
to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*,
745 F.2d at 218.

*necessarily* require reversal or remand of an ALJ's determination, the Court of Appeals for the

Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts

between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a

remand. *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level

of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless

must consider all of the claimant's impairments in combination to determine whether,

collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122

("the ALJ must consider the combined effect of multiple impairments, regardless of their

severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's

eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's

impairments without regard to whether any such impairment, if considered separately, would be

of such severity,'") (citing 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. §§ 404.1523, 416.923).

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments,

provides:

> In determining whether your physical or mental impairment or impairments are of a
> sufficient medical severity that such impairment or impairments could be the basis of
> eligibility under the law, we will consider the combined effect of all of your impairments
> without regard to whether any such impairment, if considered separately, would be of
> sufficient severity.  If we do find a medically severe combination of impairments, the
> combined impact of the impairments will be considered throughout the disability
> determination process.  If we do not find that you have a medically severe combination of
> impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he

must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. §

404.1520(d). When a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a listed impairment in combination or alone, but rather, is required to set forth the reasons for his or her decision, and *specifically* explain why he or she found a claimant's impairments did not, alone or in combination, equal in severity one of the listed impairments. *Fargnoli*, 247 F.3d at 40 n. 4 (citing *Burnett*, 220 F.3d at 119-20).

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler,* 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant

from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (citing *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999) (citation omitted). Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision. *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:

> in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work.

*Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. That is, while "there must be objective medical evidence of some condition that could

reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green,* 749 F.2d at 1070-71 (emphasis added). Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain *without contrary medical evidence. Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan,* 997 F.Supp. 648, 658 (W.D.Pa. 1998). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence); *Williams v. Sullivan,* 970 F.3d 1178, 1184-85 (3d Cir. 1992) (emphasis added), *cert. denied* 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ

> must "explicitly" weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must *consider* all the evidence and *give some reason for discounting* the evidence she rejects.

*Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli,* 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .

Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." (internal quotation marks and citations omitted)).

Medical Source Opinion of "Disability"

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48 (citing *Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted)).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002).[3]  Medical opinions on matters reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

---

[3] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*.

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[4] these Social Security Rulings require that, because an adjudicator is required to evaluate *all* evidence in the record that may bear on the determination or decision of disability, "adjudicators must *always* carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must *never* be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 4, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by

[4] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). See also SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.")

**V.    DISCUSSION**

Plaintiff raises the following issues for consideration:  (1)  At Step Two, the ALJ failed to consider Plaintiff's severe impairments;  (2)  At Step Three, the ALJ failed to consider Plaintiff's Disorder of the Spine under Listing 1.04, Plaintiff's headaches and seizure disorder under Listings 11.02 and 11.03;  (3)  At Step Five, the ALJ failed to include all of Plaintiff's severe and non-severe impairments in the residual functional capacity determination;  (4) The ALJ failed to include all of Plaintiff's impairments in his hypothetical questions to the vocational expert;

(5) The ALJ erred by making an adverse credibility determination; and (6) The ALJ's decision is not based upon substantial evidence. The Court will consider Plaintiff's argument *seriatim*.

### (1) **The ALJ committed no error at Step Two**.

In support of Plaintiff's argument that the ALJ erred at Step Two, Plaintiff contends that the ALJ erred in deciding that Plaintiff's headaches and left C5-C6 disc herniation with foramen encroachment and left ventral C6 root impingement are not severe, and that the ALJ erred in failing to even consider Plaintiff's seizure disorder and aneurysm. However, a review of the record reveals that although Dr. Bankaci diagnosed Plaintiff with headaches, that diagnosis alone does not equate to a finding of severity. Under the applicable Social Security Regulations, the question is whether the headaches cause more than a minimal impact on Plaintiff's performance of basic work functions, such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling. 20 C.F.R. §§ 404.1521(b)(1)-(6), 416.921 (b)(1)-(6). Because there was no record evidence that the headaches significantly limited Plaintiff's ability to perform basic work functions, the ALJ did not error in failing to consider her headaches a severe impairment. Tr. 19.

With regard to Plaintiff's claims of error as to her disc herniation and root impingement, the ALJ properly considered these conditions when he made the finding that Plaintiff had severe degenerative disc disease. Tr. 19.

As for Plaintiff's contention that the reversible error occurred at Step Two of the analysis because the ALJ failed to deem Plaintiff's alleged seizure disorder and aneurysm as serious conditions, as Defendant emphasizes, and this Court agrees, the analysis did not end at Step Two, but rather the ALJ found that Plaintiff had several other severe impairments, and the disability inquiry appropriately proceeded. Accordingly, the cases cited by Plaintiff, including

*McCrea v. Comm'r of Soc. Sec.,* 370 F.3d 357 (3d Cir. 2004), and *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3d Cir. 2003), are inapposite, because those cases involved claims that were denied at Step Two of the disability inquiry, whereas here, the ALJ proceeded to all five steps of the inquiry. Where the ALJ found that Plaintiff suffers from even one severe impairment, any failure on the ALJ's part to identify other conditions as severe does not undermine the entire analysis. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007)("Because the ALJ found in Salles' favor at Step Two, even if he had erroneously concluded that some of her other impairments were not-severe, any error was harmless.").

**(2)    The ALJ properly considered Plaintiff's Disorder of the Spine under Listing 1.04, Plaintiff's headaches and seizure disorder under Listings 11.02 and 11.03 at Step Three.**

Contrary to the allegations of Plaintiff, a review of the record reveals that the ALJ specifically considered Listing 1.00, relating to disorders of the spine. The ALJ properly found that the medical evidence did not contain objective signs, symptoms or findings of the degree of functional limitation required in order to satisfy the elements of Listing 1.00.

Indeed, in order to meet Listing 1.04A under the Social Security Regulations, it requires that disorders of the spine (such as Plaintiff's degenerative disc disease):

> [R]esult[ed] in compromise of a nerve root (including the cauda equine) or the spinal cord with: (A) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)  . . .

20 C.F.R. pt 404, subpt P, appendix 1, § 1.04.

According to the ALJ, he based his analysis upon the consultative examination of state agency medical expert, Nghia Tran, M.D. who evaluated Plaintiff's claim and concluded in

September of 2011 that she was not disabled and could perform a range of light duty work.  Tr. 20, 78-80, 91.

As the ALJ also correctly noted, there was no treating or examining doctor who found that Plaintiff had an impairment or combination of impairment that met or equaled a listing.  The ALJ specifically discussed the evidence: showing moderate or mild disc space narrowing at C5-C6, Tr. 494, 491; Plaintiff reported that her pain medication provided relief and that she took Percocet only "as needed," Tr. 372, 526; that Dr. Wetzel, Plaintiff's neurosurgeon, reported that she maintained a normal gait, Tr. 672, and post cervical disketomy, Plaintiff had a "good resolution of radiculopathy.  Tr. 681.  While Plaintiff exhibited left arm weakness, Tr. 384-86, she did not exhibit all of the elements necessary to meet Listing 11.04A.  Likewise, Plaintiff did not met or equal the Listings at 11.02 and 11.03, because with regard to Plaintiff's claim of Epilepsy, 11.02  states that the seizures occur more frequently than once a month, in spite of at least 3 months of prescribed treatment, and 11.03 states that the seizure occur more than once weekly.

The record reveals that not only did Plaintiff fail to follow any prescribed anti-epileptic treatment, Tr. 495, she also experienced only one episode of seizure activity during the relevant time period.  Tr. 630.  On the basis thereof, the ALJ did not error in finding that Plaintiff's clinical symptoms did not meet or equal the requirements of 11.02 and 11.03.

**(3)     The ALJ properly included all of Plaintiff's severe and non-severe impairments in the residual functional capacity determination (RFC) at Step Five; the ALJ committed no error in his credibility assessment of Plaintiff**.

Plaintiff's RFC is an assessment that takes into account all of the relevant evidence and establishes the most a Plaintiff can do despite his or her limitations. 20 C.F.R. § § 404.1545(a), 416.945(a).

> In making a residual functional capacity determination, the ALJ must consider all evidence before him . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.

*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (internal quotation marks and citation omitted).

A review of the ALJ's decision in this case reveals that he adequately reviewed the evidence of record, and evaluated Plaintiff's RFC to include: light work except she needed to avoid even moderate exposure to extreme heat or cold, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, and was limited to simply, routine, repetitive tasks; occasional interaction with the public; and work requiring only simple work-related judgments.

The ALJ's RFC findings and credibility determinations were based upon the following evidence.

Plaintiff has a history of breast cancer which required a left breast mastectomy, and a right breast mammogram in March 2010 revealed a small benign nodule. Plaintiff's treating physician, Dr. Waas noted that Plaintiff was non-compliant with follow-up treatment and refused to undergo chemotherapy to treat the benign nodule. Tr. 23, 334, 533, 535-36.

Plaintiff exhibited mild to moderate disc space narrowing at the C5-C6 level, Tr. 393, 491, and a January 2012 MRI revealed mild spinal canal narrowing at C4-C5, and C5-C6 levels. Tr. 23, 655-56.

Plaintiff reported in June of 2011, that pain medication provided relief and in August 2011, Plaintiff reported to her physical therapist that she took Percocet only on an "as needed" basis.  Tr. 23, 526.

While MRI studies revealed left side foraminal encroachment at C5-C6 level, Tr. 492, Dr. Wetzel's August 2011 examination of Plaintiff evidenced that Plaintiff exhibited a normal gait pattern.  Plaintiff underwent a discectomy in February 2012, and notes from the inpatient hospitalization surrounding the operation revealed that Plaintiff had "good" resolution of her radicular pain.  Tr. 23.

The ALJ also noted that evidence demonstrates that Plaintiff has experienced mental health symptoms and has been diagnosed with major depressive disorder, panic disorder without agoraphobia, anxiety disorder, and alcohol abuse in early remission.  Notes from the documentary medical evidence, however, reveal that Plaintiff experienced anxiety but was also described and pleasant and compliant, with no depression or agitation.  Tr. 24, 617, 672.  Furthermore, Plaintiff's treating physician noted in January 2012, that Plaintiff's attention and concentration were normal.  Tr. 24.

Further, the ALJ explained his reliance or lack of reliance on certain opinion evidence including the "little weight" he placed on the consultative examination by a psychologist in November 2011, because "these opinions are not supported by the longitudinal record."  Tr. 24.  Also, the ALJ noted that he has "provided partial weight to the opinions of the claimant's treating physician, who reported the claimant had refused chemotherapy treatment and opined that the claimant was 'likely' able to work, but did not provide any limitations."  Id.

The ALJ gave the opinions of the state agency physical consultant, who concluded that Plaintiff is capable of performing work at the light exertional level, "great weight," on the basis that they were consistent with the totality of the evidence.   Id.

Finally, regarding the assessment of Plaintiff's credibility, the ALJ noted:

> [T]he claimant's activities of daily living, including caring for her seven-year-old daughter, performing household chores, and helping her daughter with cyber school, are not as limited as one would expect, given the limitations alleged by the claimant.  Also, the claimant's lack of treatment for her mental health impairments and lack of repeated surgical intervention for her physical impairments suggest that the claimant's symptoms may not be as serious as alleged.

Id.

As rehearsed, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations. The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Moreover, it is well-established that "[a] district court will give great deference to the ALJ's credibility determination because he or she is best equipped to judge the claimant's demeanor and attitude," *Mallough v. Astrue*, 2009 WL 982795, *6 (W.D. Pa. Apr. 9, 2009)(citing *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003)).

Therefore, as the above reiterated discussion by the ALJ demonstrates, substantial evidence supports the RFC findings of the ALJ, and the ALJ adequately explained his reasons

for crediting or rejecting certain medical evidence. The RFC adequately accounts for Plaintiff's cervical degenerative disc disease, because light work requires only modest physical demands, and as for Plaintiff's headaches, seizure, and aneurysm, the record does not evidence that these impairments caused greater functional limitations than those set forth in the RFC, and the Court notes that Plaintiff only experienced seizure during the relevant time period and Dr. Maxowiecki deemed her neurologically stable. Tr. 630. There is also no evidence that her brain aneurysm, which was diagnosed in February of 2012, caused significant functional limitations. Furthermore, the ALJ adequately explained his reasons for his credibility findings, and without more, will not be disturbed.

(4) **The ALJ included all of Plaintiff's impairments in his hypothetical questions to the vocational expert**.

In support of Plaintiff's argument that the ALJ's hypothetical question to the vocational expert was incomplete, she contends that the vocational expert failed to properly include Plaintiff's cervical herniated disc bulge, her headaches, seizures and brain aneurysm. However, as Defendant emphasizes, and this Court agrees, a diagnosis alone is not sufficient to support a claim of disability. *Wilkerson. v. Sullivan (In re Sullivan)*, 904 F.2d 826, 845 (3d Cir. 1990). Rather, the issue remains whether Plaintiff's impairments create functional limitations and, if so, the level of their severity. The evidence presented in the record does not necessitate any further limitations on Plaintiff's RFC and therefore, the hypothetical was not incomplete. *See Rutherford*, 399 F.3d at 554 (a hypothetical question should reflect impairments that are supported by the record).

**(5)    The ALJ's decision is supported by substantial evidence.**

For all of the reasons set forth hereinabove, the decision of the ALJ is supported by substantial evidence of record. The Court may not reweigh the evidence of record, but rather, must defer to the Commissioner and affirm her findings when substantial evidence supports the findings. Accordingly, Defendant's Motion for Summary Judgment will be GRANTED, and Plaintiff's Motion for Summary Judgment will be DENIED. An appropriate Order follows.


<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:    All Registered ECF Counsel and Parties